HARRIS, Judge.
The trial court ordered a fifteen-year-old, married female into emergency shelter under the supervision of HRS. HRS appeals; we reverse.
The following dialogue occurred at the hearing for emergency shelter for the daughter of the fifteen-year-old, married female:
COURT: Can a married juvenile be sheltered with the Department?
HRS: No, Judge. Once she’s married, she’s no longer in the jurisdiction of Chapter 39.
COURT: If I were to order her into shelter you’d have to file an appeal?
HRS: I’d have to object for the record, anyway.
COURT: That would take you some time, wouldn’t it? Lisa, under the circumstances, I’m gonna do something that you’re gonna find just horrible. I’m ordering you into shelter as well.
HRS: Judge, I just want to voice the Department’s objection.
COURT: And certainly your objection is noted. I’m going to order you into shelter as well. I think you are about to make some really horrible mistakes that I’ve seen happen before. I’m going to put you in shelter with your child, if it can be arranged, usually it can, but I want the two of you under the protection of the State of Florida right now. I don’t think it’s in your best interest to be moving in with a 30-year-old man under your circumstances. I think it’s a real bad idea. So, I’m gonna shelter you as well. And I’d ask for daily reports to be filed into my office with Patty to let me know where Lisa is, how she is doing, whether she has been reunited with Jessica and what kind of game plan we can put together for the two of them in a hurry. Jessica — Lisa’s problem is she has nowhere to go and she is going to make some very bad choices about where she goes, and they could be harmful for her child. Just because she is unfortuitously married, if that is a word, I don’t think the State should turn its back on her. She’s still a kid. So, Lisa, again, I’ll appoint a lawyer, I’ll give you the same guardian ad litem as Jessica has, the same lawyer, and I want to put you into shelter together.
HRS, of course, urges that even the court is required to follow the law as it finds it to be and not as it wishes it were. It does appear from the record that even though the court conceded that Chapter 39 does not apply to a married juvenile, it nevertheless ordered the young woman into shelter care because the court believed it appropriate. Apparently the court believed that this young female who was separated from her husband and who was about to move in with an older man remained at risk. The judge’s heart was in the right place; his mind was clouded by good intentions. We hope by this opinion to clear the mind without damaging the heart.
Chapter 39 is really not all that clear in informing us as to exactly what the legislature meant by “unmarried child.” Did the legislature merely mean that the State should not interfere in an ongoing marriage of even a juvenile? Certainly one might expect that a young girl’s interest would be protected by the marital relationship. Or did the legislature mean that the State should not protect a vulnerable, immature, at-risk fifteen-year-old female merely, because she happened to repeat marital vows even though the marital relationship did not outlast the echo of those vows? Because this issue was not raised below or before this court, the resolution of this question must await another day. We mention it only because it ap *67 pears to have influenced the court, even if subconsciously, to make the statements which appear in the record and which are totally unacceptable.
We must reverse and suggest in the strongest language that a court should not abuse the appellate process or this court by requiring an appeal only for the purpose of delay, even for a cause it finds noble.
REVERSED AND REMANDED.
COBB and W. SHARP, JJ., concur.